**NOT FOR PUBLICATION**  **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANK M. SAGGESE, Pro Se,<br><br>Plaintiff,<br><br>v.<br><br>FRANK CORRENTE, WARDEN; RALPH McGRANE, UNDERSHERIFF; DR. SHALTS, PSYCHIATRIST; OFFICER ANTHONY LOTZ; BOARD OF CHOSEN FREEHOLDERS OF MORRIS COUNTY; EDWARD ROCHFORD, SHERIFF; and CORRECTIONAL MEDICAL SERVICES,<br><br>Defendants. | Civil Action No. 07-4867 (SDW)<br><br>**OPINION**<br><br>February 14, 2008 |

**WIGENTON**, District Judge.

Before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Frank Corrente ("Corrente"), Ralph McGrane ("McGrane"), Dr. Shalts ("Shalts"), Officer Anthony Lotz ("Lotz"), Board of Chosen Freeholders of Morris County ("Board"), Edward Rochford ("Rochford"), and Correctional Medical Services ("CMS") (collectively, "Defendants"). Frank M. Saggese ("Plaintiff") filed opposition to Defendants' dismissal motion. The record presented requires the Court to *sua sponte* convert Defendants' dismissal motion to a motion for summary judgment ("Motion"). The Court decides the Motion without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, the Court **GRANTS** Defendants' Motion.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391(b).

1

## II. BACKGROUND and PROCEDURAL HISTORY

### A. Factual Findings

Plaintiff alleges that while he was a pretrial detainee in the Morris County Correctional Facility ("MCCF") Defendants denied him medical care, failed to protect him from harm, and failed to train and supervise its employees. (Pl's Am. Compl.) Plaintiff claims that he is mentally ill, and suffers from bi-polar disorder and Hepatitis-C. (Pl.'s Compl. §§ 4b, 4h.[1]) Plaintiff claims his problems commenced in October, 2004. (Pl's Am. Compl. 6.)

The central incident in Plaintiff's Complaint is an attack that occurred on March 23, 2006 when inmate James Kousar ("Kousar") entered Plaintiff's cell, struck and fractured his jaw, and cut his face with an overgrown fingernail sharpened as a weapon. (Pl's Am. Compl. 10.) Plaintiff was transported to Morristown Memorial Hospital where his jaw was wired shut and he received six stitches. (Pl.'s Certif. ¶¶ 3, 4.)

Plaintiff certifies that while hospitalized he asked Officer Lisa Knowlton about filing a grievance and receiving help completing it, and was told that he would be given assistance upon returning to prison. (Id. at ¶ 4.) When he returned to MCCF three days later, Plaintiff proclaims that, while his jaw was wired shut and he was under the influence of a number of painkillers and psychotropic medications, he gave an oral incident report to the prison officers in the processing area. (Id. at ¶ 9.) At some point in April, 2006 Plaintiff "asked Officer Lenahan the 3-d housing unit officer for a grievance form to no avail." (Id. at ¶ 13.) Plaintiff states he was in pain and heavily medicated, experiencing "a complete blur," until April 6, 2006 when he was released from custody. (Id. at ¶¶ 10, 11; Corrente's Certif. ¶ 6.) Plaintiff returned to MCCF during two

---

[1]Plaintiff refers in his Amended Complaint to facts, incidents and allegations set forth in his original Complaint. Accordingly, the Court considers his Complaint filings as an intentional joint submission for motion adjudication purposes.

other periods: from June 22, 2006 to August 21, 2006, and from January 22, 2007 to May 16, 2007. (Corrente's Certif. ¶ 6.) There is no record of Plaintiff ever submitting any grievance forms while in MCCF's custody. (Id. at ¶ 9.)

Plaintiff is currently incarcerated at Southern State Correctional Facility ("SSCF"). He was transferred there after pleading guilty on March 8, 2007 to criminal charges resulting in a seven year sentence. ( Def.'s Mot. to Dismiss 2.) Although he offers no proof, Plaintiff states that he recently wrote a letter to Warden Corrente without receiving a reply, and that he spoke via telephone to Officer French. (Pl.'s Certif. ¶ 15.) Plaintiff proclaims that Officer French, upon hearing of Plaintiff's claims, said that there was "no way to grieve those issues" and he didn't "think it was necessary." (Id.)

**B. Inmate Manual**

The MCCF Inmate Manual ("Inmate Manual") gives detailed rules for filing grievances: "A grievance may be initiated for an alleged violation of civil, constitutional [or] statutory rights, the violation of facility policy or to resolve a condition existing within the facility that creates unsafe or unsanitary living conditions," and requires that "[a]n inmate who believes that he/she has a grievance must complete the appropriate form." (Def.'s Mot. to Dismiss, Ex. A.) Grievance forms may be obtained from Housing Unit Officers or any other staff member. (Id.) Completed forms are forwarded to the Grievance Coordinator and a reply is given within five working days. (Id.)

There are no deadlines or time periods in the Inmate Manual for filing initial grievances. (Id.) There are two levels of appeals, and both have strict deadlines. If an inmate is unsatisfied with the result of his initial grievance, he is given five working days to appeal to the Grievance Committee. (Id.) Appeal determinations by the Grievance Committee may be appealed to the Facility Administrator or the Administrator's Designee withing five working days. (Id.) The

3

Inmate Manual advises that "[i]n the event you file a grievance and are released from custody[,] the grievance shall become null and void." (Id.)

## C. Claims

Plaintiff alleges that Corrente, McGrane, and Rochford failed to protect Plaintiff from a known risk of harm. Plaintiff alleges that, as a mentally ill detainee, he should have been placed in the unit trained to deal with mental disorders. Instead, Plaintiff was confined to the maximum security housing unit, where supervising officers purportedly had no such training. Plaintiff further alleges that prison officials were aware prior to the attack that Kousar "was out to get" Plaintiff. (Pl.'s Am. Compl. 10.) Plaintiff also offers an additional allegation of a daily, hour-long ransacking of his cell and unnecessary strip search after having been secured in his cell for the previous twenty three hours. (Pl.'s Compl. § 4b.)

Plaintiff claims Corrections Officer Lotz, who was assigned to monitor Plaintiff while in MCCF's custody, failed to properly supervise Plaintiff's cell block or to protect him from harm. Plaintiff also claims that Lotz had knowledge of Kousar's potential threat to Plaintiff but did not act to protect him. Finally, Plaintiff contends Lotz had an improper lack of training in dealing with mentally ill inmates. (Pl.'s Am. Compl. 11.)

Plaintiff's allegations against MCCF Dr. Shalts and CMS are: failure to protect him from harm by allowing him to be detained in a portion of the prison not trained to deal with mentally ill inmates, and improperly administering medication leading to damaging side effects and liver damage. (Pl.'s Compl. at §§ 4e, 4h.) Dr. Shalts acts as MCCF's Head Psychiatrist and physician, and is under contract with CMS to render medical care and treatment to MCCF inmates.

Plaintiff contends that the Board failed to maintain and adequately operate the MCCF. (Id. at § 4f.)

4

## III. LEGAL STANDARD

If, on a 12(b)(6) motion to dismiss for failure to state a claim, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6). As both parties tendered substantial proofs and documentation outside the pleadings, the Court is required to *sua sponte* convert Defendants' Rule 12(b)(6) motion to a motion for summary judgment. Furthermore, the Prison Litigation Reform Act ("PLRA") requires such a conversion, explaining that when a prisoner fails to state a claim upon which relief can be granted, the "court shall on its own motion or the motion of a party dismiss any action brought with respect to prison conditions under section 1983." 42 U.S.C. § 1997e(c)(1).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant; it is material if, under the substantive law, it would be outcome-determinative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant has the initial burden to demonstrate that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). The movant must "present a factual scenario without any unexplained gaps." Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581 (3d Cir. 1992). Moreover, where the movant is the defendant, or the party that does not have the burden of proof on the underlying claim, it "has no obligation to produce evidence negating its opponent's case." Id. Rather, the movant can simply "point to the lack of any evidence supporting the non-movant's claim." Id. Once the movant meets its initial burden under Rule 56(c), the opposing party "may not rely merely on allegations

5

or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(c); Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the opposing party fails to do so, "summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e). In determining whether there is a genuine issue of material fact, the Court may not weigh the evidence or determine the truth in the matter. Anderson, 477 U.S. at 249. Moreover, the Court must draw all reasonable inferences in favor of the non-movant. Id. at 255. It is on this standard that the Court adjudicates Defendants' motion.

## IV. DISCUSSION

### A. The PLRA Exhaustion Requirement

The PLRA states that "**[n]o action** shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (Emphasis added.) 42 U.S.C. § 1997e(a).[2] It follows that if a plaintiff has not properly exhausted the available administrative remedies, a federal court must dismiss the case. Woodford v. Ngo, 548 U.S. 81 (2006). Grievance procedures in inmate handbooks are administrative remedies that must be exhausted under the PLRA prior to suit. Concepcion v. Morton, 306 F.3d 1347, 1348-49 (3d Cir. 2002).

The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The administrative process must be followed to completion before suit may be brought in federal court; a prisoner

---

[2] The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Pursuant to the foregoing definition, Saggese is a PLRA pretrial detainee.

6

does not exhaust administrative remedies until a grievance is fully pursued through each level of appeal available in the prison's system. Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000); Spruill v. Gillis, 372 F.3d 222 (3d Cir. 2004). Indeed, administrative remedy exhaustion is required "even if (1) the prisoner believes such administrative remedies to be ineffective, or (2) the available administrative process cannot grant the desired remedy." Camino v. Scott, 2006 WL 1644707 at *3 (D.N.J. 2006) (citing Booth v. Churner, 532 U.S. 731, 739-41 (2001)).[3]

Failure to exhaust administrative remedies is an affirmative defense and defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial." Kounelis v. Sherrer, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005) (citing Spruill, 372 F.3d at 223 n.2).

**B.  The PLRA's Application to Plaintiff**

Defendants have satisfied their burden of pleading and proving the exhaustion affirmative defense. While the Inmate Manual provides the appropriate administrative path for exhaustion, Concepcion, 306 F.3d at 1348-49, Plaintiff failed to provide any contrary information, or any documentation for that matter, demonstrating that he initiated, much less exhausted, his administrative remedies before bringing this action. Plaintiff never filed a grievance form or completed any level of appeal. (Corrente's Certif. ¶ 9.)

Subsequent prison terms or transfer do not grant exhaustion avoidance, especially where, as here, the Inmate Manual contains no initial grievance filing deadline. Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004) ("Berry's administrative remedies were available to him during three periods of his confinement in the custody of the NYCDOC"); Miller v. Schuylkill County Prison,

---

[3] A plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n. 4 (3d Cir. 2000) ("[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

2007 WL 3342766 at *5 (M.D.Pa. 2007) ("transfer of a prisoner from the facility where the grievance subject arose to another facility does not excuse the prisoner from complying with the first facility's exhaustion requirement")[4]. Congress had three interrelated objectives in mind when creating the exhaustion requirement, none of which have been satisfied by Plaintiff's inaction: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Foley v. Pennsylvania, 2007 WL 3147042 at *4 (W.D.Pa. 2007).

Plaintiff's reliance on Mitchell is also unpersuasive. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (as defendant did not plead exhaustion defense, district court erred in leaving unaddressed a prisoner's claim that administrative remedies were unavailable due to prison officials refusal to provide him with a grievance form). While a prison's administrative remedies can be rendered unavailable when officials refuse to provide required grievance forms, that is not the case here. Although Plaintiff's opposition papers claim that he was denied grievance forms during his first prison term, it is notable that his certification merely states that his request for a grievance form was "of no avail." (Pl.'s Certif. ¶ 13.) A grievance form request being "of no avail" is vastly different than a grievance form denial.

Moreover, in Mitchell, the alleged obstruction made plaintiff miss his fifteen-day initial filing deadline. Mitchell, 318 F.3d at 529. As the MCCF initial grievance procedure is absent any deadline, Plaintiff is not excused from filing. There is no time limitation preventing him

---

[4]Despite Plaintiff's claim that the Inmate Manual's "null and void" language barred his grievance after his first release, Defendants confirm that there "are no time limitations, 5 days or otherwise, with respect to the filing of a grievance contained in Section 801 [of the Inmate Handbook]. Rather, the only time limit set forth in Section 801 is the 5-working days allowed MCCF to answer any grievance filed." (Def.'s Reply to Pl.'s Certif.) Therefore, the requisite grievance procedure was available to Plaintiff after his initial release.

from overcoming his singular grievance request made to "no avail." Plaintiff submitted no proofs evidencing an affirmative grievance denial by prison staff. Nor did he set forth: (1) any attempts to follow-up his grievance request, (2) any other attempts to secure a grievance form, or (3) any attempts to file an appeal during the approximate twenty-two months thereafter.[5] Plaintiff's failure to file is consequently unexcused, and his claims are *prima facie* deficient in demonstrating the unavailability of administrative review.

Finally, the Mitchell decision was expressly predicated on the defendant's failure to invoke the exhaustion affirmative defense. Mitchell, 318 F.3d at 529. In this case, Defendants have plead the exhaustion affirmative defense, and therefore, meet their burden.

## V. **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) is hereby **GRANTED**. Plaintiff's Complaint is dismissed in its entirety without prejudice and the Clerk of the Court shall remove this case from the Court's active docket.

**SO ORDERED.**

s/Susan D. Wigenton, U.S.D.J.

cc: Judge Madeline Cox Arleo

---

[5]Although Plaintiff contends he was "in a blur" during the two week period after his attack, he does not argue that his over-medicated or injured state continued after April 6, 2006. As such, it was Plaintiff's responsibility to file the required grievance after recovering from his alleged conditions.